# EXHIBIT 1

BRICKLIN & NEWMAN LLP
lawyers working for the environment

Reply to: Seattle Office

September 11, 2018

Scott Kiilsgaard
Darigold
33 East Francis Ave.
Spokane, WA 99208

    Re:    Notice of Intent to Sue

Dear Mr. Kiilsgaard:

We represent Spokane Riverkeeper ("Riverkeeper"), 35 West Main Ave., Spokane, WA. Any response or correspondence related to this matter should be directed to us at the letterhead address. This letter is to provide you with sixty days' notice of our client's intent to file a citizen suit against Inland Northwest Dairies, LLC d/b/a Darigold under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Darigold's National Pollution Discharge Elimination System ("NPDES") permit.

For stormwater discharges from Darigold/Inland Northwest Dairies' milk processing facility, located at or about 33 East Francis, Spokane, WA 99208, to the Spokane River via municipal separate storm sewer systems, Darigold was granted coverage under the Washington Industrial Stormwater General Permit, issued by the Washington Department of Ecology ("Ecology") on October 21, 2009, effective January 1, 2010, modified May 16, 2012, effective July 1, 2012, and set to expire on January 1, 2015, under National Pollutant Discharge Elimination System Permit No. WAR-301800 (the "2010 permit"). Since January 2, 2015, these discharges have been authorized by the iteration of the Washington Industrial Stormwater General Permit issued December 3, 2014, effective January 2, 2015, and expiring on December 31, 2019 (the "2015 Permit"), under the same permit identification number.

Darigold has violated and continues to violate the CWA (*see* Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342) and the terms and conditions of the Permits. Each violation of the Clean Water Act subjects Darigold to penalties of up to $37,500 per violation per day. 40 C.F.R. § 122.41, modified by 40 C.F.R. § 19.4. If you have any information demonstrating that one or more of the violations outlined in this notice is incorrectly stated, please immediately provide that information to us and specify the violation to which you claim the information relates. This letter serves as notice of Riverkeeper's intent to file suit in U.S. District Court pursuant to the CWA following the expiration of 60 days from the date of this letter. 40 C.F.R. § 135.2(c).

Scott Kiilsgaard
September 11, 2018
Page 2

### I.    Spokane Riverkeeper's Commitment to Improving Water Quality in the Spokane River.

Spokane Riverkeeper has members and supporters who live, recreate, and work throughout the Spokane River basin, including near and downstream of Darigold's facility. Riverkeeper's mission is to restore and protect the water quality of the Spokane River and all life connected to it, from the headwaters to its confluence with the Columbia River.

Threats facing the Spokane River are severe by any measure. The Spokane River currently does not meet water quality standards for several parameters and is on the Washington State's 303(d) list for impairments for dissolved oxygen and poly chlorinated biphenyls among others[1]. The input of stormwater effluent adds to the water quality problems in the river and ultimately deprives the public of their legal uses. According to the National Research Council, "[s]tormwater runoff from the built environment remains one of the great challenges of water pollution control, as this source of contamination is a principal contributor to water quality impairment of waterbodies nationwide." Urban Stormwater Management in the United States, National Research Council (Oct. 15, 2008), available online at: http://www.epa.gov/npdes/pubs/nrc_stormwaterreport.pdf (emphasis added). To address this leading cause of water quality impairment, Riverkeeper invests significant time and resources in reducing pollutant loads from process wastewater and stormwater sources. When rain sends runoff across city streets, construction projects, and industrial facilities, the water picks up contaminants that are drained into waterways such as the Spokane River and its tributaries. These toxics accumulate in local fish, wildlife, and birds. Simply put, stormwater pollution is a public health issue with particular impacts on low income residents that regularly use the Spokane and other local waterbodies as a food source for their families.

Similarly, hazardous wastes generated by industrial activities present significant threats to the Columbia River Basin. Such wastes can enter the environment and remain for long periods of time, contaminating drinking water supplies, public beaches, private lands, and critical habitat for fish and wildlife, as well as expose people to serious health risks. These risks are especially pronounced in the Spokane River, where there has been long-term and pervasive industrial pollution. Currently, fish caught in the Spokane River are not fit for human consumption due to toxic contamination.

Spokane Riverkeeper is committed to improving water quality through various program areas including public education, volunteer water quality monitoring, advocating for strong environmental protection laws, and pollution permit enforcement. This Notice of Intent to Sue Darigold is part of the public interest organization's effort to improve quality of life in the Spokane River Basin for purposes including human health, recreation, habitat quality, and subsistence, recreational, and commercial fishing.

---

[1] https://ecology.wa.gov/Water-Shorelines/Water-quality/Water-improvement/Assessment-of-state-waters-303d

Scott Kiilsgaard
September 11, 2018
Page 3

## II. Contact Information of Person Giving Notice

The contact information for the person giving notice of the intent to sue is as follows:

>Jerry White
>Spokane Riverkeeper
>35 West Main Ave., Suite 300
>Spokane, WA 99201
>Tel: 509-835-5211

The contact information for Spokane Riverkeeper's legal counsel is as follows:

>Jacob Brooks
>Bryan Telegin
>Bricklin & Newman, LLP
>1424 Fourth Ave., Suite 500
>Seattle, WA 98101
>Tel: 206-264-8600
>Email: brooks@bnd-law.com
>          telegin@bnd-law.com

Please direct any correspondence to Spokane Riverkeeper's legal counsel.

## III. Violations of the Industrial Stormwater General Permit

Section 301(a) of the CWA prohibits the "discharge of any pollutant" except as in conformance with several other sections of the Act, including section 402. 33 U.S.C. § 1311(a). "Pollutant" is defined as "dredged spoil, solid waste, incinerator residue . . . chemical wastes . . . wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste." 40 C.F.R. § 122.2.

Condition S10.C of the Permits requires Darigold to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate Stormwater Pollution Prevention Plan ("SWPPP") and best management practices ("BMPs"). Darigold has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge as described below in this notice of intent to sue.

Upon information and belief, Darigold has discharged and continues to discharge pollutants in violation of its NPDES permit and section 402.

Scott Kiilsgaard
September 11, 2018
Page 4

### A. Corrective Action Violations

#### 1. Benchmark exceedances

The benchmark guideline concentrations for stormwater discharges are outlined in Condition S5.A, and industry-specific benchmarks that are applicable to Darigold are outlined in Condition S5.B. Darigold has discharged pollutants that have exceeded benchmarks on several occasions, including at least the following self-monitoring dates:

| Date or period of sample | Pollutant | Permit Benchmark | Sample concentration (or average) exceeding benchmark |
| --- | --- | --- | --- |
| 2015 1st Quarter | Turbidity | < 25 ug/L | 126 ug/L |
| 2015 4th Quarter | Turbidity | < 25 ug/L | 60.5 ug/L |
| 2016 1st Quarter | Turbidity | < 25 ug/L | 31.8 ug/L |
| 2016 2nd Quarter | Turbidity | < 25 ug/L | 44.9 ug/L |
| 2017 2nd Quarter | Nitrate + Nitrite | < .68 ug/L | 1.047 ug/L |
| 2017 2nd Quarter | Oil & Grease | Yes/No | Yes |
| June 15, 2017 | Zinc | < 117 ug/L | 225 ug/L |
| 2017 3rd Quarter | Turbidity | < 25 ug/L | 33.1 ug/L |
| 2017 3rd Quarter | Zinc | < 117 ug/L | 259 ug/L |
| 2017 4th Quarter | Total BOD5 | < 30 ug/L | 145.15 ug/L |
| 2017 4th Quarter | Turbidity | < 25 ug/L | 37.1 ug/L |
| 2018 1st Quarter | Zinc | < 117 ug/L | 461 ug/L |
| 2018 1st Quarter | Copper | < 32 ug/L | 51.4 ug/L |
| 2018 1st Quarter | Turbidity | < 25 ug/L | 744 ug/L |
| 2018 2nd Quarter | Oil & Grease | Yes/No | Yes |
| 2018 2nd Quarter | Total BOD5 | < 30 ug/L | 75.6 ug/L |
| 2018 2nd Quarter | Turbidity | < 25 ug/L | 32.5 ug/L |

In addition to the above benchmark exceedances, upon information and belief, Darigold has exceeded benchmarks for turbidity in the Second and Fourth Quarters of 2014. Darigold also exceeded the benchmark for phosphorus for the Fourth Quarter of 2014.

Based on these benchmark exceedances, it is apparent that the measures outlined in Darigold's SWPPP are either not effectively reducing pollutant concentrations in stormwater discharged from the site, as required by the 2010 and 2015 Permits, or are not effectively implemented, also in violation of those permits.

#### 2. Violations of the level one requirements

Condition S8.B of the Permits requires Darigold to take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

Scott Kiilsgaard
September 11, 2018
Page 5

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Dairgold: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits. Condition S8.B.4 of the Permits requires Darigold to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Darigold has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time in the past five years that its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in the table above.

### 3. Violations of the level two requirements

Condition S8.C of the Permits requires Darigold take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Darigold: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.B of the Permits. Condition S8.C.4 of the Permits requires Darigold to implement the revised SWPPP according to condition S3 and the applicable stormwater management manual as soon as possible, and no later than August 31st of the following year.

Darigold has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time since January 1, 2013, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated in the table above, these violations include, but are not limited to, Darigold's failure to fulfill these obligations for turbidity, triggered by its stormwater sampling during calendar years 2015, 2016, 2017, and 2018.

Scott Kiilsgaard
September 11, 2018
Page 6

### 4.    Violations of the level three requirements

Condition S8.D of the Permits requires Darigold to take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permits, a Level Two Corrective Action requires Darigold: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include treatment BMPs, along with necessary operational and/or structural source BMPs, and have the SWPPP reviewed and certified by a qualified industrial stormwater professional that it is expected to meet the benchmarks upon implementation; (3) submit an engineering report before the installation of treatment BMPs; and (4) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.B of the Permits.  Condition S8.D.5 requires Darigold to implement the revised SWPPP as soon as possible, and no later than September 30th of the following year.

Darigold has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional treatment BMPs, and the required summarization in the annual report each time since January 1, 2013, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated in the table above, these violations include, but are not limited to, Darigold's failure to fulfill these obligations for the 2017 and 2018 calendar years.

### B.    Stormwater Pollution Prevention Plan Violations

Condition S3.A.1 of the Permits requires Darigold to develop and implement a SWPPP as specified. Condition S3.A.2 of the Permits requires the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards.  On information and belief, Darigold has violated these requirements of the Permits each and every day during the last four years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

Condition S3.A of the Permits requires Darigold to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions.  On information and belief, Darigold has violated these requirements of the Permits each and every day during the last four years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs.  Condition S3.A.3 of the Permits requires that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved

Scott Kiilsgaard
September 11, 2018
Page 7

stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. Upon information and belief, Darigold's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

Darigold's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. Upon information and belief, the SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours and seasonal variations in business hours or in industrial activities as required.

Upon information and belief, Darigold's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

Upon information and belief, Darigold's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

Upon information and belief, Darigold's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in storm water discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

Case 2:18-cv-00357-SAB    ECF No. 1-1    filed 11/15/18    PageID.25    Page 9 of 11

Scott Kiilsgaard
September 11, 2018
Page 8

Upon information and belief, Darigold's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance and modification.

Upon information and belief, Darigold's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, including identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Darigold will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit).

Upon information and belief, Darigold's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

Upon information and belief, Darigold's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff. Darigold's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

Upon information and belief, Darigold's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

Upon information and belief, Darigold's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations, documents why each discharge point is not sampled, identifies each sampling point by its unique identifying number, identifies staff responsible for conducting stormwater sampling, specifies procedures for sampling collection and handling, specifies procedures for sending samples to the a laboratory, identifies parameters for analysis,

Scott Kiilsgaard
September 11, 2018
Page 9


holding times and preservatives, laboratory quantization levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

    C.    **Reporting Violations**

Condition S9.B requires Darigold to submit a complete and accurate annual report by May 15th of each year. The annual report must (1) identify the condition triggering the need for corrective action review; (2) describe the problem(s) and identify the dates they were discovered; (3) summarize any corrective actions completed during the previous calendar year and the dates completed; (4) describe the status of any Level 2 or 3 corrective actions triggered during the previous year and identify the dates of completion for the corrective actions; and (5) include corrective action documentation as required in S8.B – D.

Darigold violated these requirements by failing to identify the condition triggering the need for corrective action review, failing to describe problems and identify dates discovered, failing to summarize corrective actions completed during the previous calendar year, failing to describe the status of corrective actions triggered and dates of completion for corrective action, and failing to include corrective action documentation. Darigold has violated the requirements of Conditions S9.B for the annual reports submitted for calendar years 2014, 2015, 2016, and 2017.

## IV.    Request for SWPPP

Pursuant to Condition S9.F of the 2015 Permit, Riverkeeper hereby requests that Darigold provide a copy of, or access to, its SWPPP, complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Darigold fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the 2015 Permit, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## V.    Conclusion

The above-described violations reflect those indicated by the information currently available to our clients. These violations are ongoing. Our clients intend to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 USC § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $32,500 per day for each violation before and through January 12, 2009 and up to $37,500 per day for each violation thereafter. In addition to civil penalties, Riverkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 USC § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Scott Kiilsgaard
September 11, 2018
Page 10

Our clients believe that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period to file a citizen suit against Inland Northwest Dairies, LLC d/b/a Darigold under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Very truly yours,

BRICKLIN & NEWMAN, LLP

*Jacob Brooks*

Jacob Brooks

JB:psc

cc:  Andrew Wheeler, Administrator
     Environmental Protection Agency
     1200 Pennsylvania Avenue, N.W.
     Washington, DC 20460

     Chris Hladick
     USEPA REGION 10
     1200 Sixth Avenue
     *Mail Code:* RA-210
     Seattle, WA 98101

     Maia Bellon, Director
     Washington Department of Ecology
     PO Box 47600
     Olympia, WA 98504-7600

     Jeff Sessions, Attorney General
     U.S. Department of Justice
     950 Pennsylvania Avenue, NW
     Washington, DC 20530-0001

     C T Corporation System
     711 Capitol Way S STE 204
     Olympia, WA 98501